**TRIMBLE, Admr., Plaintiff-Appellee, v. WESTERN AND SOUTHERN LIFE INS. CO., Defendant-Appellant.**

Ohio Appeals, First District, Butler County.

No. 937.   Decided July 12, 1948.

J. T. Lamb, for plaintiff-appellee.
John D. Andrews, Hamilton, for defendant-appellant.

## OPINION

By HILDEBRANT, J.:

This is a suit to recover the accidental death benefits provided in two policies of insurance.

The cause was submitted to the court without a jury on the admissions contained in the answer and the following agreed statement of facts:

"Melvin Trimble, Plaintiff's deceased, was enlisted or enrolled as a member of the Navy of the United States of America on or about May 1, 1945, and had not been discharged therefrom at the time of his death.   After his enlistment, he received so-called boot training at the Great Lakes Naval Training Station in Illinois; on the 25th day of August, 1945, he duly received a furlough from the United States Navy, which furlough had not expired at the time of his death. On August 28, 1945, while driving his father's private automobile on a public highway known as Verity Parkway between

the City of Middletown and the home of his parents and himself at Excello, Ohio, and while returning from a trip made from his parents home earlier in the day for purely social reasons, personal to himself and unconnected with any interest of the United States Navy, the vehicle which he was driving was accidently overturned and caused to fall on the body of the said Melvin Trimble, thereby causing him personal injuries, which injuries caused his death about 2:00 A. M. on September 1, 1945,

At the time of his death, the said Melvin Trimble was 18 years of age.

"Both policies of insurance mentioned in the Petition were issued by the Defendant upon the life of the said Melvin Trimble at the date stated in the Petition and both said policies were in full force and effect at the time of his injury and death as hereinabove set forth.

"After the death of the said Melvin Trimble and before the institution of this action, Defendant received due proof that the said Melvin Trimble had died as hereinabove set forth and refused to pay the accidental death benefits provided in said policies, or any part thereof, and at no time offered to return the premiums paid on said policies or any of them or any part thereof."

The defense is based on the military exemption clause contained in each policy, which reads as to Exhibit "A":

"Provided further that, in any event, this accidental death provision shall **not** apply—* * * are sustained while the Insured is in the military or naval service in time of war; * * *"

And as to Exhibit "B":

"Provided further that, in any event, this accidental death provision shall **not** apply—* * * are sustained while the Insured is in the military or naval service of any country at war; * * *"

The trial court took judicial notice that active hostilities, or the so-called shooting war with Japan ended on August 14, 1945, with the Presidential announcement of the surrender of Japan and the subsequent holidays proclaimed for August 15th and 16th, 1945, and the announcements in press and over radio to the effect that the war was over, and found

the issues joined for the plaintiff, although likewise noticing that the formal surrender ceremony on the Battleship Missouri did not take place until September 2, 1945, one day after the death of the insured.

In construing these exemption clauses as no defense to liability, the court followed a line of cases arising for the most part after the first world war, where the phraseology of the so-called war clauses varied and included such language as "in consequence of", "resulting from," "engaged," "risk," "active service," etc., and the courts found such language first, to be ambiguous, and then proceeded to apply the familiar rule of construction against the insurer, resulting in upholding the right to the benefits.

The problem presented by these cases is well stated in 137 A. L. R., 1268, and 1270-71, as follows:

"The primary question in connection with the nature and character of the risks contemplated by the parties to a policy of life or accident insurance containing a provision relating to military service on the part of the insured is whether the parties intended that the provision should be applicable to relieve the insurer from liability, or lessen its liability, merely on the basis of the status of the insured as a member of the nation's armed forces, or, instead, contemplated that, before the provision should be applicable, it must appear that death occurred as a result of the insured's military activities, and was attributable, directly or indirectly, to his participation in military service.

"It is, of course, obvious that the wording of the particular contract to be construed is of primary importance in this connection. The policy may, for example, be so worded that there can be no doubt that the parties intended that the insured's mere status as a member of a military organization would be insufficient to make the provision operative and that causation between the participation of the insured in military service and his subsequent death must be established. * * *

"A policy may, on the other hand, be so worded that it is clear that the parties intended that the mere status of the insured as a member of the armed forces should be sufficient to make the provision relating to military service operative, and that the insured's death while such a member should be enough to relieve the insurer, irrespective of whether or not it was attributable to his military activities."

On reason and the great weight of authority these war clauses are held not be against public policy, and from the language under consideration here it is clear to the court that

the parties intended the mere status of the insured as a member of the armed forces be sufficient to make the war clauses operative. This Court likewise takes judicial notice of a state of war existing between this country and Japan which actually was not terminated by the ceremonies aboard the battleship Missouri on September 2, 1945, but was followed with active hostilities in a different theatre of action thereafter.

There is no ambiguity in the clauses here under construction and the court considers it is bound to give effect to the clear intent of the parties and apply the general and first rule of construction expressed in 22 O. Jur., 330, as follows:

"Accordingly, an insurance company is liable according to the terms and provisions of its contract and not otherwise; and where the language used is clear, plain, and certain, no other meaning can be added by implication or intendment. This means that the terms of an unambiguous insurance policy cannot be enlarged or diminished by judicial construction; in other words, that the court cannot make a new contract for the parties where they themselves have employed express and unambiguous words. So it has been said that the courts cannot rewrite contracts of insurance for either party no matter how illiberal may be their terms; provided there be no fraud and an absence of legislation nullifying their provisions; rather, they are compelled to interpret them as written, subject only to the rule that provisions may be strictly construed against the company by which they were written, and in favor of the insured; also that courts are not privileged to make contracts for others, or to change conditions of contracts lawfully made, because of some personal notion of what good morals and fair dealing may require in a particular case."

Again, at page 339, referring to construction and inveighing against forfeiture, it is said:

"On the other hand, if conditions invalidating policies are unambiguous and are such as affect the risk of the insurer without violating the law, they should be enforced."

Again, at page 339, it is said:

"If the language in which an exception or limitation is couched in plain words and is not inconsistent with other clauses or provisions, the rule which calls for a strict construction against the insurer is qualified by the rule that effect must be given to such exceptions or limitations as are

of plain meaning and not inconsistent with other provisions of the contract. In other words, where an exception clause is plain, specific, and unambiguous, there is no room for construction and the language used must be given effect without contradiction."

We cite with approval: **Bending v. Metropolitan Life Ins. Co., 74 Oh Ap 182;** Eggena v. New York Life Ins. Co. 18 N. W. (2d.) 530; State Mutual Ins. Co. v. Harmon, 33 S. E. (2d.) 105; Life & Casualty Ins. Co. v. McLead, 70 Ga. App., 181, 27 S. E. (2d.) 871; Lindsay v. Life' Casualty Ins. Co., 70 Ga. App., 190, 27 S. E. (2d.) 877, with facts almost identical with the instant case, and list of citations at page 875; 137 A. L. R., 1263, et seq.; Reid v. American Nat. Assurance Co., 218 S. W. 957.

Accordingly, the judgment is reversed, and final judgment may be entered in this Court for the defendant.

MATTHEWS, PJ, ROSS & HILDEBRANT, JJ, concur, in syllabus, opinion & judgment.